# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

|                              |   |                     |
|------------------------------|---|---------------------|
| UNITED STATES OF AMERICA,    | ) |                     |
| Plaintiff,                   | ) |                     |
| v.                           | ) | Case No. 07-20168   |
| KEITH McDANIEL,              | ) |                     |
| Defendant.                   | ) |                     |

## MEMORANDUM AND ORDER

On May 15, 2009, a jury convicted defendant Keith McDaniel of conspiracy to manufacture, possess with intent to distribute, or distribute 50 grams or more of cocaine base ("crack") and 5 kilograms or more of cocaine. Mr. McDaniel received a 360-month sentence. On September 25, 2009, he filed a direct appeal. The Tenth Circuit denied the appeal, filing a mandate on September 30, 2011.

This matter presently comes before the court on defendant's Motion for In Camera Inspection (docs. 1376, 1385) and Motion for a New Trial (docs. 1322, 1343, 1350, 1354, 1361, 1362). For the reasons discussed below, these motions are denied.

## BACKGROUND

Mr. McDaniel was convicted for his participation in a widespread conspiracy to distribute cocaine base and cocaine in the Kansas City area from January 2006 to November 2007. The Drug Enforcement Administration (DEA) began investigating

the conspiracy in 2006, and as part of their investigation applied for and obtained wiretaps on several suspected conspirators' phones. Seven of the conversations intercepted by DEA agents implicated Mr. McDaniel, and he was eventually charged, along with twenty-three other individuals, as part of the drug conspiracy. At trial, the government sought to introduce, through Task Force Officer Eric Jones, numerous recorded conversations obtained through wiretaps. Mr. McDaniel moved to suppress the intercepted phone calls, arguing that the calls could not be authenticated.

The government offered testimony from three witnesses, each identifying Mr. McDaniel's voice on the intercepted calls. First, Officer Jones testified that he was familiar with Mr. McDaniel's voice and positively identified his voice on seven different recordings containing incriminating conversations. Second, Danny Tarrants testified that he and Mr. McDaniel had been friends since 2004 and that they had maintained consistent contact from 2004 to 2007. To demonstrate his familiarity with Mr. McDaniel's voice, Mr. Tarrants was given three audio recordings and asked to identify if any of them contained Mr. McDaniel's voice. Mr. Tarrants identified one of three audio recordings as belonging to Mr. McDaniel–one of the same recordings identified by Officer Jones. Finally, the government presented testimony from Agent Timothy McCue. Agent McCue testified that he had participated in the arrest of Mr. McDaniel and that he had a conversation with him at the time of the arrest. Agent McCue further testified that based on this conversation, he believed Mr. McDaniel was the speaker on the phone calls the officers had previously associated with him

2

during the investigation.

During trial, this court found the voice identification of Mr. McDaniel sufficient to authenticate the intercepted phone calls. With respect to Mr. McDaniel specifically, the court stated that "Mr. Jones testified about his firsthand knowledge of Mr. McDaniel's voice, identified his voice on those calls, and Mr. McCue provided corroboration of that particular testimony. There's also some circumstantial evidence that ties those calls together as well." In addition, at sentencing the court noted that it found the testimony of Danny Tarrants to be credible at trial (doc. 1184, at 298).

After the jury returned a guilty verdict, Mr. McDaniel appealed this court's denial of his motion to suppress the intercepted calls. *United States v. McDaniel*, No. 09-3273, 2011 WL 2006304 (10th Cir. May 24, 2011). He argued that Officer Jones's testimony was not specific enough to establish minimum familiarity. The Tenth Circuit found that Officer Jones's testimony met the requirements of Fed. R. Evid. 901 regarding voice identification and affirmed this court's decision.

Mr. McDaniel is before again this court on his Motion for In Camera Inspection and Motion for a New Trial. For the reasons set forth, these motions are denied.

## DISCUSSION

**I.      Motion for In Camera Inspection**

Mr. McDaniel requests the court to conduct an in camera review of

"Discovery, Grand jury mins against the defendants Keith McDaniel, Chauncey Anderson and Marcus McDaniel AKA Harv." Mr. McDaniel's motion is construed as a request for review of discovery and grand jury transcripts. His motion can best be divided into two arguments. First, Mr. McDaniel alleges that one of the intercepted phone calls offered against him at trial had been altered. Second, he challenges the voice identification of intercepted phone calls by two law enforcement officers.

*A. Altered Evidence*

Mr. McDaniel requests that the court inspect "call records from Nov. 26, 2007 at 12:19 to 1:00 to phone (816)359-2335" and "962-65 it should be three short phone calls. One before 12:19 and after" as contradictory to trial testimony. Specifically, he contends that the word "thirty" was added to one of the intercepted phone calls. Mr. McDaniel provides no support for his assertion that the phone call has been altered.

During trial, Mr. McDaniel's attorney played an intercepted call from November 26, 2007 (doc. 1111, at 585) and then replayed the same call, drawing the jury's attention to particular portions (*id.* at 589). In addition, Mr. McDaniel's attorney cross-examined Officer Jones regarding the content of the phone call (*id.* at 593-97). Specifically, he questioned Officer Jones regarding the word "thirty" in the transcript of the call, noting that in a previous transcript the word "thirty" had been identified as the word "party." Officer Jones testified that after listening to the

4

intercepted call a second time, he changed his opinion regarding the content of the call, and, thus, changed the final authenticated transcript accordingly (*id.*).

There is a "longstanding principle that it is the jury's province to weigh the evidence and to draw reasonable inferences from testimony presented at trial." *Turrentine v. Mullin*, 390 F.3d 1181, 1197 (10th Cir. 2004). Here, the trial record clearly demonstrates that the jury was given the opportunity to hear the intercepted call and to determine the veracity of Officer Jones's testimony regarding the content of the call. Thus, Mr. McDaniel has shown no basis for an in camera review of discovery, and his motion is denied.

### B. *Challenge to Voice Identification*

Mr. McDaniel also challenges Officer Jones's and Agent McCue's voice identification of the intercepted phone calls. He fails to provide any explanation or support for his challenge to Officer Jones's voice identification. Instead, Mr. McDaniel requests an in camera review "to corroborate and help assist a decision" for his Motion for a New Trial, which contends that the government committed a *Brady* violation by failing to disclose "a case pending [against Agent McCue] since 2003 for excessive force." This motion is addressed below.

In camera inspection of grand jury transcripts may be proper where a defendant has identified particularized need and has shown it to be likely that the witnesses' testimony at trial was inconsistent with their prior grand jury testimony. *See Dennis v. United States*, 384 U.S. 855, 872-73 (1966). Here, Mr. McDaniel does

5

not explain how an in camera review of discovery or grand jury transcripts will advance his challenge to Officer Jones's or Agent McCue's voice identification. He does not identify any particular discovery materials or portions of grand jury transcripts that might support his claim. Furthermore, Mr. McDaniel does not allege any inconsistency between Officer Jones's or Agent McCue's testimony before the grand jury and his testimony at trial. Thus, his motion for an in camera review of discovery or grand jury transcripts is denied.

## II. Motion for a New Trial

Under Federal Rule of Criminal Procedure 33 a defendant may file a motion for a new trial based on newly discovered evidence. Fed. R. Crim. P. 33(b)(1). "A motion for a new trial is not regarded with favor and is only [granted] with great caution." *United States v. Herrera*, 481 F.3d 1266, 1269–70 (10th Cir. 2007) (internal quotation omitted). The decision whether to grant a motion for new trial is committed to the sound discretion of the trial court. *United States v. Stevens*, 978 F.2d 565, 570 (10th Cir. 1992).

Mr. McDaniel identifies a number of grounds for which he asserts a new trial should be granted: (1) the Government violated its disclosure obligation under *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to disclose pending civil litigation relating to Agent Timothy McCue, (2) evidence obtained from a wiretap application that failed to name the defendant should have been suppressed, (3) an intercepted phone

6

call used to indict the defendant was altered,[1] (4) testimony by Officer Eric Jones violated Federal Rule of Evidence 90(b)(5) and (6), and (5) ineffective assistance of counsel because his attorney was "[i]nexperienced in wiretap cases" (doc. 1322).

*A. Timeliness*

Federal Rule of Criminal Prcedure 33(b) provides that a motion for a new trial–other than one based on newly-discovered evidence–must be filed within 14 days after the guilty verdict. In this case, the jury returned its verdict on May 15, 2009. Mr. McDaniel's pro se motion was not filed until May 6, 2011.

Here, only the first ground in Mr. McDaniel's motion contends that evidence was newly discovered after the trial. Thus, the remaining grounds are dismissed as untimely.

*B.* **Brady** *Violation*

Mr. McDaniel contends that the prosecution committed a *Brady* violation by failing to disclose pending civil litigation against Agent McCue at the time of Mr. McDaniel's trial. In his reply, Mr. McDaniel additionally asserts a *Brady* violation for failure to disclose a finding made in that civil case that the version of events offered by Agent McCue and two other law enforcement officers lacked credibility. *See Bowling v. United States*, 740 F. Supp. 2d 1240, 1243 (D. Kan. 2010).

To establish a *Brady* violation, a defendant must demonstrate that "(1) the

---

[1] Mr. McDaniel asserts the same claim here as he set forth in his Motion for In Camera Inspection. Again, Mr. McDaniel provides no support for this contention.

7

prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense." *Scott v. Mullin*, 303 F.3d 1222, 1230 (10th Cir. 2002) (quotations omitted). The government argues that the defendant is not entitled to a new trial for three reasons: (1) the government did not suppress evidence as the pending litigation against Agent McCue was public record, (2) the evidence was not favorable to the defendant because it was inadmissible to impeach Agent McCue, and (3) the evidence was not material because Agent McCue's testimony was only corroborative of testimony by two other key witnesses.

**1. Suppression of Evidence**

The first part of a *Brady* claim requires that the prosecution suppress evidence. To meet this requirement, the defendant must show that the evidence was in the possession or control of the government. *United States v. Erickson*, 561 F.3d 1150, 1163 (10th Cir. 2009) (citing *United States v. Gardner*, 244 F.3d 784, 788 (10th Cir. 2001); *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir.1998) ("*Brady* obviously does not apply to information that is not wholly within the control of the prosecution."); *United States v. Maldonado-Rivera*, 489 F.3d 60, 67 (1st Cir. 2007) ("For *Brady* to operate, the government not only must know about undisclosed evidence but also must have custody or control of that evidence.")). Evidence is considered within the control of the government even where the prosecutor herself does not have, or even know of, the evidence, so long as one of her agents has it. *Erickson*, 561 F.3d at 1163. There is no *Brady* violation, however, where the information was available to

8

the defendant from another source. *Coe*, 161 F.3d at 344.

Here, evidence of pending litigation against Agent McCue was public record and was available to the defendant from another source. Thus, the government did not suppress evidence as the pending litigation against Agent McCue was not wholly within control of the prosecution or its agents. In addition, the government did not suppress the court's finding regarding Agent McCue's lack of credibility because the finding was made on September 17, 2010, over a year after the conclusion of Mr. McDaniel's trial. *See Bowling*, 740 F. Supp. 2d at 1243.

## 2. Favorable Evidence

The second part of *Brady* "requires proof the evidence in question was exculpatory, or favorable, to the defendant." *Smith v. Secretary of N.M. Dep't of Corrections*, 50 F.3d 801, 825 (10th Cir. 1995). Evidence that could have been used to impeach a witness also falls within *Brady*. *Id.* at 825-26.

Federal Rule of Evidence 608 only permits the credibility of a witness to be attacked where the evidence relates to the witness' "character for truthfulness or untruthfulness." At the time Mr. McDaniel's trial concluded, the only allegation against Agent McCue in the pending civil litigation was "excessive force." Because that evidence did not relate to character for truthfulness or untruthfulness, it was inadmissable as impeachment evidence and, thus, was not favorable to the defendant.

## 3. Material Evidence

The third part of a *Brady* claim "requires proof that the evidence was 'material

either to guilt or to punishment.'" *United States v. Combs*, 267 F.3d 1167, 1175 (10th Cir. 2001) (citing *Smith*, 50 F.3d at 826). "'A fair analysis of the holding in *Brady* indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial.'" *Smith*, 50 F.3d at 826 (quoting *United States v. Agurs*, 427 U.S. 97, 104 (1976)). Evidence is therefore material "'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.'" *United States v. Hughes*, 33 F.3d 1248, 1251 (10th Cir. 1994) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

In this case, the court is convinced that there is no reasonable probability that the evidence of pending litigation against Agent McCue, even had it been admissible, would have affected the outcome of the trial. As this court noted during trial, "Mr. Jones testified about his firsthand knowledge of Mr. McDaniel's voice, identified his voice on those calls, and Mr. McCue provided corroboration of that particular testimony." The testimony by these two law enforcement officers was corroborated by Danny Tarrants, an associate of Mr. McDaniel from 2004 to 2007. Mr. Tarrants identified one of three audio recordings as belonging to Mr. McDaniel–the same recording previously identified by Officer Jones.

As this court noted during trial, Agent McCue's testimony was only part of evidence presented identifying Mr. McDaniel as the speaker on seven intercepted

phone calls. Therefore, even if evidence of pending litigation involving Agent McCue had been disclosed to the defense and admissible at trial, the court does not believe it is reasonably probable that it would have resulted in a different outcome for the defendant.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion for In Camera Inspection (docs. 1376, 1385) and Motion for a New Trial (docs. 1322, 1343, 1350, 1354, 1361, 1362) are denied.

**IT IS SO ORDERED** this 7th day of November, 2011.

                                         s/ John W. Lungstrum
                                         John W. Lungstrum
                                         United States District Judge